IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ELBERT GORDON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSUNION, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff, Elbert Gordon ("Plaintiff"), brings this Class Action Complaint against Defendant, TransUnion, LLC (hereinafter referred to as "TransUnion" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

1. Plaintiff brings this action against TransUnion for its failure to secure and safeguard the personally identifiable information ("PII") and private information ("Private Information") of Plaintiff and Class Members.

2. TransUnion is a financial institution and one of the nation's three largest credit reporting agencies, responsible for maintaining the PII of hundreds of millions of individuals in the United States. It has an annual revenue of $4.2 billion.[1] In the regular course of its business,

---

[1] https://investors.transunion.com/~/media/Files/T/Transunion-IR-V2/reports-and-presentations/transunion-q2-2025-earnings-presentation.pdf (last visited September 4, 2025).

TransUnion is required to maintain reasonable and adequate security measures to secure, protect, and safeguard its customers' PII against unauthorized access and disclosure.

3. On or about July 28, 2025, an unauthorized third party accessed TransUnion's information systems through a third-party application used in its U.S. customer support operations, compromising the PII of TransUnion customers (the "Data Breach").

4. Defendant failed to properly secure and safeguard Representative Plaintiff's and at least 4.4 million other Class Members' PII stored within Defendant's information network, including, without limitation, Social Security numbers and other information constituting "personally identifiable information" or "PII."

5. Defendant discovered the breach as early as July 28, 2025 but did not announce the Data Breach until on or about August 26, 2025, and failed to inform victims when or for how long the Data Breach occurred. This month-long delay in notification prevented victims from taking timely action to protect themselves from identity theft and fraud. While Defendant now claims it will "continue to enhance our security controls as appropriate to minimize the risk of any similar incident in the future,"[2] such measures should have been in place before the Data Breach occurred.

6. TransUnion required customers and class members to provide sensitive PII and failed to protect it. TransUnion had an obligation to secure customers' PII by implementing reasonable and appropriate data security safeguards. This was part of the bargain between TransUnion and Plaintiff and Class Members.

7. As a result of TransUnion's failure to provide reasonable and adequate data security, Plaintiff' and the Class Members' unencrypted, non-redacted PII have been exposed to

---

[2] https://www.infosecurity-magazine.com/news/transunion-data-breach-us-customers/ (last visited September 4, 2025).

unauthorized third parties. Plaintiff and the Class are now at much higher risk of identity theft and cybercrimes of all kinds, especially considering the highly sensitive PII stolen here and the fact that the compromised PII is likely already being sold on the dark web. This risk constitutes a concrete injury suffered by Plaintiff and the Class as they no longer have control over their PII, which is now in the hands of third-party cybercriminals.

8. Plaintiff and Class Members have expended time, effort, and money dealing with this breach, including purchasing credit monitoring services, reviewing financial and insurance statements, checking credit reports, and scrutinizing accounts and information for unauthorized activity.

9. Plaintiff and the Class seek redress for a lifetime of harm they will now face, including, but not limited to, reimbursement of losses associated with identity theft and fraud, out-of-pocket costs to mitigate the risk of future harm, compensation for time and effort spent responding to the Data Breach, the costs of extending credit monitoring and ID theft insurance, and injunctive relief requiring that TransUnion implement and maintain reasonable data security practices in the future.

**PARTIES**

10. Plaintiff Elbert Gordon is a resident of Escambia County, Florida, who reasonably believes their PII was compromised in the Data Breach.

11. Defendant TransUnion is a for-profit corporation with its principal place of business located at 555 West Adams, Chicago, Illinois, 60661, and is one of the three major credit bureaus, maintaining the PII for hundreds of millions of Americans.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) (CAFA), as the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 Class Members, and at least one member of the class is a citizen of a state different from Defendants.

13. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, have purposefully availed themselves of the benefits and privileges of conducting business in this District, and have caused harm to Plaintiff and class members as a direct result of actions they take in this District.

14. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to the claims occurred here and Defendant does business in this District.

## PLAINTIFF EXPERIENCES AND HARM

15. Plaintiff's Private Information was within the possession and control of Defendant at the time of the Data Breach and was exposed.

16. Plaintiff has spent time dealing with the consequences of the Data Breach, including:

   a. Verifying the legitimacy and impact of the breach

   b. Exploring credit monitoring and ID theft insurance options

   c. Self-monitoring accounts

   d. Seeking legal counsel regarding options for remedying or mitigating the effects of the breach.

17. Plaintiff suffered actual injury:

   a. Damages to and diminution in the value of PII, a form of intangible property that Plaintiff entrusted to Defendant.

   b. Lost time, annoyance, interference and inconvenience, anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling their information.

   c. Imminent and impending injury from the substantially increased risk of fraud, identity theft, and misuse, resulting from PII being placed in the hands of unauthorized third parties.

18. Plaintiff has a continuing interest in ensuring their PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of:

   a. "All persons residing in the United States whose personally identifiable information was accessed by and disclosed in the Data Breach to unauthorized persons, including all who were sent a notice of the Data Breach."

   b. "All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before July 28, 2025."

20. Excluded: Any officer or director of TransUnion, any affiliate/parent/subsidiary of TransUnion, counsel in this action, the Court, its staff, and all individuals who opt out using the

correct protocol, as well as all federal/state/local governments and their branches, and all judges assigned to any aspect of this litigation and their immediate family members.

21. Subclassing is possible based on the types of data compromised.

22. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class is so numerous that joinder of all members is impractical, if not impossible. Membership in the Class will be determined by analysis of Defendant's records.

23. Commonality: Common questions include, but are not limited to:

  a. Whether TransUnion engaged in the wrongful conduct alleged;
  b. Whether TransUnion's inadequate data security measures caused the Data Breach;
  c. Whether TransUnion owed and breached a legal duty to Class Members to exercise due care;
  d. Whether Plaintiff and Class are at increased risk for identity theft;
  e. Whether Plaintiff are entitled to equitable relief, damages, and restitution;
  f. Whether TransUnion failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security; and
  g. Whether adequate, prompt, and accurate information was provided to Class Members about the breach.

24. Typicality: Representative Plaintiff's claims are typical of the claims of the Plaintiff Class. Representative Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

25. Adequacy: Representative Plaintiff in this class action is an adequate representative of each of the Plaintiff Class in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in its entirety. Representative Plaintiff anticipates no management difficulties in this litigation.

26. Superiority: Joinder is impracticable. Class action is superior to individual litigation and necessary to provide the benefits of single adjudication, economies of scale, and comprehensive judicial supervision. Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### 1. The Data Breach and Defendant's Practices

27. In July 2025, an unauthorized third-party accessed TransUnion's systems through a third-party application used for U.S. customer support operations and obtained files containing customers' PII, including full names, Social Security numbers, and dates of birth. To date, TransUnion has denied that credit reports or core credit-file data were accessed.

28.     The breach was discovered by TransUnion on or about July 28, 2025, but was not announced until about August 26, 2025.

29.     At least 4,461,511 persons are affected.[3]

30.     Affected individuals were not provided with details about measures taken by TransUnion to remediate the vulnerabilities, nor specifics on prevention of future incidents.

31.     Plaintiff and Class Members were reasonably required by Defendant to provide PII for services, with the reasonable expectation and mutual understanding that it would be kept confidential and secure.

32.     Even today, Class Members remain in the dark regarding which types of data were stolen, the particular malware methods, or specific steps being taken, if any, to secure information going forward.

## 2. Defendant Could Have Prevented the Breach

33.     Had TransUnion maintained industry-standard safeguards (security controls, risk assessment, timely patching, network segmentation, encryption), the data could have been protected.

34.     Despite being one of the nation's three credit bureaus with ample resources, Defendant failed to appropriately anticipate, plan for, and implement established security principles and practices.

35.     Defendant's negligence is exacerbated by repeated industry warnings about the need to secure sensitive data and other high-profile breaches in recent years.

---

[3] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 4, 2025).

36. This incident is only one part of Defendant's pattern of negligent data security. Just three years ago, in 2022, TransUnion's South Africa division was breached, affecting over 10 million consumers.[4] This previous incident further evidences Defendant's lack of adequate cybersecurity measures.

37. By collecting, storing, and controlling Plaintiff' and Class Members' PII, TransUnion assumed legal and equitable duties to protect it from unauthorized disclosure and was or should have been aware of the risks attendant to failing those obligations.

### 3. Defendant's Failing and FTC Guidance

38. Federal and state governments have established standards to minimize data breaches and resulting harm; the FTC has issued numerous guides that highlight the importance of minimizing confidential data, encryption, timely deletion, and breach response. Failing to implement such standards constitutes an unfair practice under Section 5 of the FTCA, 15 U.S.C. § 45.

39. The FTC recommends limiting access to sensitive data, requiring complex passwords, using industry-tested methods, monitoring for suspicious activity, and ensuring vendors have reasonable security practices.

40. The FTC has brought enforcement actions against companies that fail to protect PII; such failures are considered "unfair practices."

41. TransUnion failed to comply with the FTCA and FTC-provided guidance.

42. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST

---

[4] https://newsroom.transunion.co.za/update-south-africa-cyber-incident/ (last visited September 4, 2025).

Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

### 4. The Damages and Ongoing Risks

43. The PII compromised in the breach is highly confidential, valuable, and, once exposed, at risk of being sold or used for fraudulent purposes for years (e.g., identity theft, insurance fraud, government benefits fraud, tax fraud, healthcare fraud, access to bank accounts, mortgage fraud, and more).

44. The value of PII on the dark web: personal data $40–$200, bank details $50–$200, credit cards $5–$110, access to company data breaches $900–$4,500.

45. According to the FBI's Internet Crime Complaint Center (IC3) 2024 Internet Crime Report, which combined information from 859,532 complaints of suspected internet crime, internet-enabled crimes resulted in losses exceeding $16 billion—a 33% increase in losses from 2023.[5]

46. Social Security numbers are especially harmful if breached; they are difficult to change, hard to cancel, and often lead to a lifetime risk of fraud.

47. Identity theft can result in financial loss, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their

---

[5] https://www.fbi.gov/news/press-releases/fbi-releases-annual-internet-crime-report (last visited September 4, 2025).

names, credit harm, denial of credit or loans, anxiety, lost sleep, inability to concentrate, time lost at work, physical symptoms, and even suicidal feelings.

48. According to the U.S. Government Accountability Office (GAO), there can be a significant time lag between data theft and misuse.

49. Plaintiff has already suffered:

    a. Out-of-pocket expenses for mitigation

    b. Costs of monitoring for fraud

    c. Loss of time and productivity

    d. Emotional distress and anxiety

    e. Loss of value of their PII and control over their information

    f. Costs associated with future, continued risk

50. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

51. Defendant owed a duty of care to obtain, secure, safeguard, store, and protect Plaintiff' and Class Members' PII, including designing, maintaining, and testing data security systems to ensure PII was adequately secured and protected.

52. Defendant breached its duty by failing to implement reasonable and adequate security measures; by failing to timely notify affected individuals; and by violating FTC Section 5.

53. As a direct and proximate result, Plaintiff/Class suffered injury, including:

   a. Increased risk of identity theft

   b. Compromise and publication of PII

   c. Out-of-pocket expenses for prevention and remediation

   d. Lost opportunity costs

   e. The continued risk as long as Defendant retains PII inadequately

   f. Overpayment for services that lacked adequate data security

g. Damages include economic loss, emotional distress, loss of privacy, and the costs/time of dealing with the breach.

## COUNT II - UNJUST ENRICHMENT

54. Plaintiff/Class conferred monetary and intangible benefits on Defendant by providing PII and, where applicable, paying for financial services.

55. Defendant appreciated, retained, and unfairly benefited from these benefits, failing to devote resources to implement reasonable data security.

56. Defendant unjustly enriched itself by saving on security costs while shifting foreseeable risks and costs of breach to Plaintiff and Class Members.

57. Equity requires restitution and disgorgement for all unjust gains.

## COUNT III - BREACH OF IMPLIED CONTRACT

58. By requiring PII to provide services, Defendant created an implied contract obligating it to handle information with reasonable care and to protect against unauthorized disclosure.

59. Plaintiff and Class Members fully performed under the contract.

60. Defendant breached by neglecting to use reasonable security measures and failing to provide prompt notice when the breach was discovered.

61. Defendant's own privacy policies confirmed this arrangement.

62. This resulted in ongoing, imminent, and impending threat of and actual identity theft, fraud, economic and noneconomic harm.

### COUNT IV - DECLARATORY AND INJUNCTIVE RELIEF

63. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court has authority to declare the rights and legal relations of the parties and grant further necessary or proper relief.

64. Plaintiff alleges that TransUnion's existing data security remains inadequate and they face a continuing risk.

65. Plaintiff seeks a judgment declaring Defendant's current data security and oversight practices inadequate, injunctive relief requiring Defendant to implement industry-standard safeguards, and all other just relief.

### COUNT V - Breach of the Implied Covenant of Good Faith and Fair Dealing

66. Every contract in this State has an implied covenant of good faith and fair dealing.

67. Defendant breached this implied covenant by failing to maintain adequate computer systems, failing to timely and accurately disclose the Data Breach, and continuing to collect/store information after knowing the vulnerability.

68. Plaintiff/Class have suffered damages as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Petition, respectfully request that the Court enter judgment in their favor and against TransUnion, as follows:

a. Certification of this action as a class action and appointment of Plaintiff/Class Representatives and their counsel.

b. Award of all available damages, including actual, statutory, consequential, and punitive damages, restitution, and disgorgement.

c. Equitable, injunctive, and declaratory relief, including imposing comprehensive security, third-party audits, annual employee training, prohibition of cloud-based storage absent proven justification, and disclosure obligations.

d. Pre-judgment and post-judgment interest, attorneys' fees, costs, and all just, proper, or equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Date: September 8, 2025

Respectfully submitted,

*/s/ Bryan Aylstock*
Bryan Aylstock. (FL Bar # 78263)
Maury Goldstein (FL Bar # 1035936)
**Aylstock, Witkin, Kreis & Overholtz, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL  32502
T: (850) 202-1010
baylstock@awkolaw.com
mgoldstein@awkolaw.com

and

Kiley L. Grombacher (pro hac vice forthcoming)
**BRADLEY GROMBACHER, LLP**
31365 Oak Crest Drive, Ste. 240
Westlake Village, CA 91361
(T): (805) 270-7100
kgrombacher@bradleygrombacher.com